May it please the court, my name is Gerald Krent, representing the Greens, and with me is Marilyn Bednarski, counsel for Patricia Green. The Supreme Court in the Southern Union held for the first time that the Apprenti Rule applies to all criminal punishment and not just to incarceration. According to the court, and I quote, in stating Apprenti's Rule, we have never distinguished one form of punishment from another. Indeed, the court, in one of its principal illustrations, said, and again I quote, that fine schemes focused on the amount of the defendant's gain or the victim's loss, which is exactly what we have in criminal restitution, applies to Apprenti. The very first Congress set up an embezzlement and larceny provisions that were based upon the loss to the victim. Half of the punishment, half of the fine went to the government, half of the fine went to the victim. Again, you see that criminal restitution and criminal fines are ineluctably intertwined. And that's presumably why Deputy Solicitor General Michael Dabrino- What does ineluctably intertwined mean? I mean, this is just sort of a lawyer's- Well, it's one statute. One statute says that- It's either as punishment or it's not punishment. Right. Well, and this Court has held that criminal restitution is punishment. The Supreme Court has held that criminal restitution is punishment. And in this Court's decision in Bagot, it held that criminal restitution is subject to an ex post facto rule because it partakes of criminal restitution. Like fines, it does have a remedial purpose in part, but so do fines. And again, the Supreme Court has held very clearly that all types of criminal punishment are subject to Apprenti. Well, wait a minute. I think you're taking Southern Union far down the track, if I can use the phrase. You've got two circuits, the Fourth and the Seventh, that have gone the opposite way from what you would like us to do. They say it doesn't really apply here in a restitution situation. And in our situation, we, of course, have the Miller situation where a three-judge panel cannot overrule an existing precedent unless there is a direct Supreme Court or other kind of statutory change that clearly overrules the precedent. Will you explain to me how Southern Union clearly overrules our precedent, which is contrary, without Southern Union, to your position? Let me answer that in two ways, Your Honor. The first is that when the Court held that a criminal loss provision for a fine based upon a loss to the victim is subject to Apprenti, it's exactly what we have here, a loss provision that is demonstrated for punishment. It undermines the very theory of the prior cases, which held that Apprenti was only applicable to incarceration. That's clearly no longer on the books. Apprenti applies to much more. But let me answer a second way. This Court's precedence, as acknowledged by the government in this case, held that Apprenti wasn't applicable to the amount of restitution, the question of whether $250,000 is appropriate, $225,000, $275,000. That's not really what this case is about. This case is easier than Southern Union, Your Honor, because it has to do with a statutory predicate that triggers eligibility for restitution. Because what's going on in this case, unlike in all the other Ninth Circuit cases, is a question, who determines whether it's a victim? Does the jury determine whether it's a victim, or does the judge determine whether it's a victim? There was evidence at trial from which those three theories were possible about what happened in our case. There was the theory espoused by the government currently that there was padding of the contract. Let me just stop you for a second. One of the things that the Day case did in the Fourth Circuit was to indicate that you couldn't apply because there's no statutory maximum in the restitution context. How do you respond to that? I'm curious about that, and I'd like to hear how the government responds. Because in Southern Union itself, there was no statutory maximum. There was a question of how many days of violation. That's infinite. We don't know how many days of violation. In an alternative fine statute, which also was discussed in Southern Union, when the amount is like double the loss to the victim, there is, again, an infinite amount of fine that can be paid. So there is no statutory maximum. What do we do? You know, Southern Union talks about a fine, and you would like us to basically substitute restitution for fine and apply Southern Union, correct? I'm suggesting that the history and the structure are identical. That's correct, Your Honor. But if you look at the Ninth Circuit history on these restitution statutes, bar maybe one case, they reveal that we don't look at it generally as a fine or a penalty. That it's in large part for the victim, and it's not a punishment. And if anything, it's a hybrid situation. So given our history with these statutes, how does the word penalty actually, or fine, fit into the construct? Well, from the perspective of my client or from a criminal defendant, whether the money goes to a victim or to the government, I don't think it makes any difference in terms of the kind of impact it has on the defendant. Well, it might not make it, but it has a difference in why it's assessed. I mean, a fine, we all know if you say you have to pay a fine because you violated the parking meter. We know what that is. That's punishment. You know, I sinned. I paid my fine. But if instead they're saying you bumped into the parking meter, so you have to pay restitution to the city because you dented their parking meter, well, that's different. And isn't that really what we're talking about here? Well, the alternative fine statute itself, as discussed in Southern Union, is based upon the loss to the victim. As discussed, right, so is criminal restitution. And again, the very first Congress and many statutes since have it both ways, where the loss is based upon what the victim suffers. Half of it goes to the government. Half goes to the victim, right, because the historical purposes of fines and restitution are so bound together. And, again, this Court has held that clearly, even though there's a mixed motive, if you will, under law and restitution, part of it's remedial and part of it's punishment. So I think that the – and so is fines, right? Fines are partly remedial and partly punishment. Well, I understand your analogy, but as Judge McKeon has pointed out, in terms of specific terms of art, we've indicated that neither the MVRA nor the VWPA are subject to apprending. And you've got four cases, as I count them anyway. You've got Gordon, Brock Davis, DeGeorge, and Bussell, which, if you're correct, would be directly overruled by Southern. I mean, I don't see that. Well, let me take the other path. Because in all those four cases, there were challenges to the amount of restitution as the government concedes. And for this argument, I think the stronger argument on our side is that let's not talk about a challenge to the amount of restitution, which I think is possible under Southern Union. Let's talk to the challenge to the determination of who is a victim. It's a trigger for new punishment. It's like a trigger for, in ring, for whether capital punishment was allowed. It's like saying that a new fact finding that says a criminal fine has become eligible for the first time. But for the determination that there's a victim, there is no inherent authority in judges to order restitution. And that's never been argued in the Ninth Circuit, Your Honor. Indeed, the Seventh Circuit case held that restitution was civil, not applicable in the Ninth Circuit. And the Fourth Circuit, they talked about this cap. And this cap makes no sense, Your Honor, simply because there is no cap in Southern Union. And because the idea is the statutory maximum for restitution is zero, but for finding of a victim. Okay. Say all that's true, but those four cases that I mentioned are all Ninth Circuit cases. Correct, Your Honor. And under the circumstances, you're arguing that Southern Union overrules all those cases. If it's not the case, then we as a three-judge panel have no authority to do what you're asking us to do, do we? But I'm arguing something in addition to that, Your Honor, and that is not just that Southern Union undermines the rationale, which I think is all that's needed under Orm Flanagan. You need a little bit more than that. It's got to be very, very. . . It has to be strong. It has to be gutted, basically. The basic rule that Apprendi only applies to incarceration is out the window. And I think that's what informed all those cases. But I'm making a separate argument, an argument that's not foreclosed by those four cases. And that is when you have a trigger for a distinct statutory penalty, in this case whether it's fines or restitution, that trigger must be determined by the jury. That was never argued, never discussed, never resolved in those four cases. So I believe that, therefore, this panel has the ability, even aside from Southern Union, to suggest that because that issue has never been argued or resolved in those four cases, you're free to do so now. And I think the logic is compelling. What's the burden of proof on the amount of restitution? The amount of restitution wouldn't be. . . What is the burden of proof? The burden of proof currently, of course, is preponderance of the evidence. If you apply Southern Union to the amount. . . So that would have to change, too. That would have. . . on one version. My argument to you is you don't have to reach that question. The trigger argument. Correct. That would be beyond a reasonable doubt, which I think is appropriate. I'm arguing that for the trigger, the jury should determine it beyond a reasonable doubt. And the judge should determine the amount? I don't think we have to face that issue. No, but I'm asking you, how is this going to work? My own view on Southern Union down the road is that just as in alternative fine statute, the jury will have to determine beyond a reasonable doubt on the amount of monetary fine. That's what's going on now in the district courts around the country. Alternative fines provisions are being argued. And how much was a loss to the victim, that's being determined by a jury, as I'm sure the counsel for the government will tell you. That would be the same identical structure under Southern Union that could apply to criminal restitution. I'm just suggesting you need not go that far in this case. So now if . . . let's just say this went in bank and the Ninth Circuit then clarified that, unlike its past where at one point it said it was criminal or punishment-oriented and other times it said it was hybrid, as you suggest, the Ninth Circuit now has a new view and it's civil, that restitution is civil or at least it's not a criminal penalty. Then your argument would be out the window if they were . . . The argument would be out the window in many cases. The Ninth Circuit would be out the window. And the Supreme Court's decision with Clasper Tinto would be out the window, too, because they have all held that restitution partakes of criminal punishment. But, yes, absolutely, we depend upon that view. And he would then be in accord with the other two circuits. Only the Seventh Circuit has held that criminal restitution is not a . . . I'm sorry, that restitution is not a criminal penalty. The Fourth Circuit was looking at the . . . The statutory gap. That's correct, Your Honor. I see that my time is up. I thank you. I just wanted to follow up on the burden of proof question. I realize you say you don't have to decide in this case, but we have to sort of think about the scheme as a whole. So you've got two arguments. You've got the trigger argument and you've got the other argument, the one that would essentially . . . Southern Union, yes. Well, right, the Southern Union argument. And let's just take them one at a time. If . . . whether we decide in this case or not, if we went to the trigger argument, what would be the consequence of that, now or down the road? The consequence would be that in very few cases, such as in our case, when it's not clear that there's a victim, that the jury would have to make a special verdict to determine whether or not they found that there had been a victim in the case. You then have to have . . . To be consistent, whether we decide in this case or some later case, to be consistent, what we then have a scheme is where the jury decides the trigger and then the jury also has to decide by, beyond reasonable doubt, the amount of restitution. If you take the Southern Union analogy further, then you would do that. That's correct. No, I'm sorry. I was talking about the trigger argument. The trigger argument, under my view, if it's the trigger argument, then once the jury determines there's a victim, then the judge could determine under preponderance of the evidence what the amount of restitution is. In my own view, that's a logical scheme. Once we say there's a trigger, what we're saying is it's criminal and we'd have to overrule that part of our case or that says the amount of restitution is decided by a preponderance of evidence. It would no longer be consistent, right? I think it could be consistent, Your Honor. I actually disagree. I think that once the jury could determine whether the statutory idea is triggered, the predicates are satisfied, and then the judge would have the discretion to determine how much restitution. That would be, I think, consistent with the trigger ideal, Your Honor. Although I thought before you indicated you thought, actually, they would both be decided by the jury. Under one view of Southern Union, that's correct, Your Honor. I'm distinguishing what Judge Rosenzi suggested, that if we just looked at the trigger, which I think is a logical approach, then the idea is the jury is to define the facts that say a separate punishment is possible. Once the jury makes that determination, then the judge would decide the range of ---- But the reason we would say the jury has to make that determination is because we determined that it's a criminal matter. I just can't see how you have a criminal trigger and then a civil standard of proof. I'm just trying to scope out how big a ---- Let me explain why. I understand the tension that you're averting to, but I think from a perspective of the criminal justice system, I think it's the more important fact-finding to say for the jury under the Apprendi rule is whether a fine is even eligible, restitution is even eligible, capital punishment is even eligible. Those kinds of determinations must be safeguarded to the jury under Apprendi, under the Sixth Amendment. From my own view, if the question is $225,000 versus $275,000, that could be subject to a lesser standard because then it's the discretion that's given to the judge to determine, under a bunch of factors, what the appropriate amount of monetary sanction to impose. Okay. Could I just have one last question to see if I understood you correctly? You said in your case, because it's not clear who or what's the victim you need to trigger. Are you suggesting that if you had a situation where there's a robbery of one house, one family, one lady, that you wouldn't need the jury finding in those cases? Most, 85 percent of cases, plea bargained. You wouldn't need this. No, I'm just. Other cases. It goes to the jury. It goes to the jury. Right. In most cases, we know that if there's a murder, if there's a theft, if there's larceny, we know that there's a victim. Under the FCPA, it's one of those rare cases, given the facts of this case. My question is, would it be a required jury finding in every case that went to the jury? No, I'm saying that just like forfeiture sometimes now follows inevitably upon a fact of conviction, so does a finding of a victim follow inevitably in a large number of criminal violations. There are only some, such as the FCPA, when it's not automatically clear. So if it's automatically clear, then you don't have to have a jury finding? That's correct. Okay. Okay. Thank you, Your Honor. Thank you. We'll hear from the government. Good morning, Your Honor. May it please the Court, Scott Meisler on behalf of the United States. The government's position in these cases is that restitution awards here can be affirmed under the plain error standard, but we're aware that the Sixth Amendment issue in this case is also presented on de novo review in the next case before this panel. So unless there are questions about the plain error standard, I would just move directly to the Sixth Amendment issue. Okay. And I guess I wanted to start out by going back to Judge Smith's point, which is that we really aren't in a situation here where the panel has this issue as an issue of first impression or is writing on a clean slate. There are four Ninth Circuit published opinions and numerous unpublished decisions that hold that a penny doesn't apply to restitution. So we're clearly in the Miller v. Gammey world. And the reason I think it's important is because I would disagree with my opponent here on the rationale that underlies the pre-Southern Union cases. The courts in this court and other courts did not rule pre-Southern Union that a penny didn't apply to restitution because a penny was limited to incarceration. The appellant's reliance on the Ring case, which is about capital punishment, belies that assertion. There was two rationales. One was that a penny involved schemes that were determinate sentencing systems, not indeterminate, open-ended, uncapped ones. And secondly, as Judge McKeon was discussing with counsel, that some circuits treated restitution as not a criminal punishment within the meaning of the apprendee rule. So the question for this panel, really, under Miller v. Gammey and the Orm Yang case we've cited, is whether those rationales can be reasonably harmonized. That's the words this court has used, reasonably harmonized with Southern Union. And we think they can as the Fourth Circuit concluded in Day and as the Seventh Circuit concluded in Wolf. And those are significant because you have courts- One of those rationales doesn't work. I mean, we've held it's criminal, right? I mean, some circuits have held it civil, but we haven't. So that out isn't available to us without overruling another one of our precedents, right? I don't think so, Your Honor. This court has never held that restitution is criminal for purposes of the Sixth Amendment. I think that's significant for two reasons. One is that even courts that have held, as this court has, that restitution is criminal for other constitutional provisions, the Ex Post Facto Clause, the Eighth Amendment, as did the Third Circuit in Leahy, in the en banc Leahy decision, have relied on the remedial, non-punitive aspects of restitution. And so I think that's one important aspect. And the second part is that forfeiture, another financial penalty that I'll probably come back to, that I'll try to come back to in a minute, forfeiture is also not subject to apprendee under the Supreme Court's cases. And this court's recent decision in Phillips, which we cited to the court in the 20HA letter, but is subject to Eighth Amendment scrutiny and is deemed punitive for those purposes. So saying something is punitive for purposes of the Ex Post Facto Clause or the Eighth Amendment doesn't necessarily mean that something is a criminal punishment in the meaning of the apprendee rule. So from the government's perspective then, if were we to be enamored with the approach suggested by your learned opponent, we would have to go en banc to do so. Yes, I don't see any way you could do it without going en banc. Because, again, you have two rationales, neither of which have been undermined by Southern Union. My opponent mentioned the idea of these trigger findings. But not all trigger findings themselves are subject to the apprendee rule. And we know that from Oregon v. Ice. And the court called them predicate findings in that case that the state court had found to increase the quantum of punishment. That was sentences running concurrently versus consecutively. So you had incarceration, a penalty that's unquestionably subject to apprendee, and the judge in Ice had to make findings after the jury returned a verdict that increased the quantum of punishment by letting him run the sentences consecutively and lengthening the prison term. And the Supreme Court in that case held that there was no apprendee right, no Sixth Amendment right to jury findings on those triggers. So I don't think that gets you there. Secondly, counsel also mentioned the idea that there was no statutory maximum issue in Southern Union. I think there's two responses. One is that there was, and the court certainly treated the days of violation there, the jury finding of one day, 50,000, as the cap in that case. And then the counsel discussed 3571D, the alternative gain or loss provision, that the court also discussed in Southern Union. Well, as in the FAF case in the Second Circuit that predated Southern Union and that reached the same result, that actually is subject to a cap. It's a $250,000 default max or $500,000 for organizations like Southern Union. And it was only when the loss or the gain that forms the basis for the fine exceeds that amount that you have an apprendee problem. And that is what the Second Circuit held. In fact, distinguishing its prior precedents that had declined to apply apprendee to forfeiture and to restitution as well. So it's consistent, I think, again, the no statutory max rationale is consistent with Southern Union where the court went on to say, in discussing the early history of the fine systems in America, the court went on to say, indeed, that there was no apprendee problem a fortiari if no maximum is prescribed. And this court, in the Phillips case decided about two weeks ago, relied on that very language in declining to extend apprendee to forfeiture. So if we're talking about a situation here where we're just trying to reconcile intervening Supreme Court precedent with this circuit's cases, I think the Phillips decision on forfeiture is tremendously important. Counsel has not mentioned it. And it shows, again, both that the no statutory maximum rationale is still alive, still well, and that, again, core to the Fourth Circuit. And it also shows that this – Let me ask you, in Southern Union, it seemed that one of the court's central premises is that you really needed to show that for each day you get the fine that there was a violation, like in effect a criminal undertaking, which is normally beyond a reasonable doubt. So each time you counted the day, you had to know that they were violating on that day. Is there a similar underlying violation that needs to be proved for the restitution statute? Well, you have, of course, the count of condition here, the Foreign Corrupt Practices Act convictions, and the money laundering convictions. I don't mean that. I mean in figuring out the restitution. Well, yes. Because the penalty for Southern Union was day by day. Yes. I think that's what tipped the court to saying that a penalty applies, because, in effect, every time you're going to impose the fine, you have to say on that day that person violated this statute. Maybe they didn't violate it yesterday, but they did this, this, and this day. Yes. I think as a matter of statutory construction, Your Honor, the answer is yes. And I think we probably agree with their side on this, that there do have to be findings made that there's someone who's a victim, right, and that there's an amount of loss. And then the court is required under the MVRA. Again, we think this is a witness protection in that case, that restitution is discretionary here. But the court, under the MVRA, has to order restitution in the full amount of loss. So there is fact. There's unquestionably fact-finding taking place under the current regime at the sentencing phase. And that's why I do think – Maybe I'm not phrasing my question correctly. I'm asking you, is there a parallel between the fact-finding as to whether there's a victim and the fact-finding on a fine in Southern Union, which really is a day-by-day determination of a violation? I'm asking you if that's parallel or if there's some disjunction there in terms of how one ought to analyze it. Well, I guess I think, Your Honor, that it seems to me that the better, the more accurate parallel is actually between the amount of loss and the number of days, right, the actual punishment, the full amount of fines that were at issue in Southern Union versus the full amount of loss that's going to be ordered in a restitution case. And that's why, maybe like Your Honor, I understood from your call to the counsel, I find the idea of distinguishing between the trigger findings and the findings needed to raise the amount of loss somewhat puzzling. I would think that once you're into the restitution world, each time a judge fines more money, that's going to increase the amount of money the defendant's ordered to pay. And if restitution is treated as punishment, that would, again, seemingly increase the quantum of punishment. So it seems an odd rule for this Court to come down and say, well, our prior decisions didn't explicitly discuss this trigger argument, even though the trigger argument is based on the very same language in Blakely that Southern Union is based on. So for the Court to come down now and say, we don't have to go en banc, we don't have to overrule our precedents, we didn't discuss this trigger finding, it would lead to a very strange regime in which you had jury findings beyond a reasonable doubt, someone's a victim, that the victim in MVRA cases suffered a pecuniary loss, but then she's leading up to the judge to fine what it is by a preponderance of the evidence standard. So certainly from the government's point of view, we would prefer that regime to one where all findings are made by the jury beyond a reasonable doubt, but it seems a strange regime, and I don't think it's one that's consistent with either the logic of the Apprendi cases or with this Court's precedents. But it's not really that different from jury finding guilt and the judge imposing punishment. You just leave some things for the judge afterward. You just have the jury making key findings, that's what's required. I don't see what's so strange about it. Well, maybe it's not strange, but if it's not strange, I'm also not sure why it's constitutionally required or problematic. I mean, then we're talking about loss. Then loss, I think, loses the magic that the accountants are ascribing to it because then loss just becomes like something in the guidelines where loss is calculated by the judge by preponderance of sentencing. And under Booker, of course, that's permissible so long as the judge doesn't go, these findings don't push the sentence above the statutory max. And again, that I think reinforces the idea that the statutory max rationale survives Southern Union. So the judge determines loss for purposes of imposing punishment? Yes, for purposes of determining the advisory sentencing guidelines range. So that's the key word there is advisory. Yes, Your Honor. So the court makes findings, but the reason the jury doesn't have to do them is because they're not mandatory, because they're advisory guidelines. So that's what the court did in, what was it, Blakely. So their findings are to their amount, but they're not strictly binding on the, they don't require a particular sentence. So they're not the same kind of findings. Whereas here, if there is a finding of a, that there's a victim, it's mandatory. Right? The restitution is mandatory. That's correct, Your Honor. But again, I think that the key rationale, the reason the court was able to make the guidelines advisory and cure the constitutional deficiency in the guidelines in the Booker case was because that changed what the statutory maximum then became, the actual statute in the book, not the guidelines range. So so long as the sentence is within the guidelines range found by the judge and the judge doesn't go above the actual statutory maximum, then there's no constitutional problem. That's why the remedy worked at Booker. So again, I think the rationale is not necessarily mandatory versus advisory, but. I don't know whether it works or not. Well, I'll leave that for you to decide. How well it worked, as far as I know. I see my time has expired. I'm happy to answer any further questions the Court has. Thank you. If you recall, one justice described it as a train wreck back then. You can say that. I can't. I'm just saying one justice did. Just very briefly, Your Honor. We'll give you a minute for rebuttal. Okay. One minute is fine, Your Honor. If we had an indeterminate punishment scheme based upon imprisonment where a judge could go from zero to an infinite amount of years of punishment, it's an indeterminate scheme. And the question is, what about the eligibility for punishment at all? The amount of years would be discretionary, but certainly the jury would have to make the critical finding that someone is eligible for prison. Indeed, in the government's brief at page 26, he acknowledges that the Sixth Amendment protects the critical factual finding to trigger the indeterminate amount of sentencing. And that's all we're suggesting here. We have an indeterminate amount of criminal penalties in terms of monetary sanctions. What does this do to forfeiture, then? Forfeiture I haven't studied, but the key thing is two things about that. Most forfeiture follow, as in this case, follow automatically upon the fact of conviction. Moreover, the other thing that the Court has said in Sixth Amendment cases is you have to look at common law and in England to see what kind of discretion the jury played. The jury played no discretion in consecutive versus concurrent sentences as in ICE, which my counsel for the adversary discussed. But the jury did play a very critical role, as the Supreme Court in the Southern Union stated, both in England and in the colonies and in the early states, in making the factual determinations of how much criminal restitution was due. A large number of states did that. The first Congress teed it up with the statute and embezzlement and larceny that we discussed. So we have a rich history of factual finding, both for criminal fines and criminal restitution done by juries and by imprisonment, not for concurrent sentences, not for other things as well. So I think if you look at that, it's very consistent with the scheme that if you have predicate findings plus a history of common law, that's the sine qua non of where Apprendi applies. Thank you, Your Honor. Thank you.
judges: Kozinski, McKeown, Smith